UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br>            Petitioner(s),<br>v.<br>STATION CASINOS, LLC,<br>            Respondent(s). | Case No. 2:22-cv-00100-RFB-NJK<br><br>**REPORT AND RECOMMENDATION**<br><br>[Docket No. 22] |

Pending before the Court is the motion of Intervenor Local Joint Executive Board of Las Vegas ("LJEB") to enforce its subpoena. Docket No. 22. Respondent Station Casinos filed a response in opposition. Docket No. 27. LJEB filed a reply. Docket No. 28. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed more fully below, the undersigned **RECOMMENDS** that the motion to enforce subpoena be **GRANTED**.

**I.    BACKGROUND**

This is an enforcement action stemming from an NLRB complaint. In this matter, LJEB seeks to enforce a subpoena *duces tecum* served on the custodian of records for Respondent. *See* Docket No. 22-3. That subpoena includes 97 requests for documents from numerous individuals. *See id.* Following related proceedings in the NLRB, LJEB now comes to this Court for an order requiring a complete production by Respondent and a certification of compliance.

**II.    MAGISTRATE JUDGE AUTHORITY**

The authority of a magistrate judge is derived from 28 U.S.C. § 636, which generally provides a magistrate judge with the authority to "hear and determine any pretrial matter" except for eight enumerated motions. 28 U.S.C. § 636(b)(1)(A). The Federal Rules of Civil Procedure further indicate that a magistrate judge has the authority to resolve a matter that is "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a); *see also* Fed. R. Civ. P. 72(b) (stating conversely that a magistrate judge does not have the authority to resolve a "pretrial matter

1

dispositive of a claim or defense"). When a matter is deemed "dispositive" in nature, a magistrate judge submits a recommendation to the assigned district judge that is subject to the district judge's *de novo* review. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Fed. R. Civ. P. 72(b). The Ninth Circuit has recently decided that adjudicating ancillary discovery matters must be deemed "dispositive" when that matter is the only issue in the case at bar and there is not a merits-based case pending in federal court from which the document dispute arises. *See CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 808 (9th Cir. 2022). Accordingly, the undersigned issues this recommendation to the assigned district judge for his *de novo* review.

### III.   STANDARDS

The inquiry in an agency subpoena enforcement proceeding is narrow. *N.L.R.B. v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir. 1996). That inquiry is guided by a burden-shifting analysis. The party seeking enforcement bears the initial burden of showing that (1) Congress granted the authority to investigate; (2) the procedural requirements have been followed; and (3) the evidence is relevant and material to the investigation. *Id.* If the party seeking enforcement establishes these requirements, then the burden shifts to the subpoenaed party to establish the inquiry is unreasonable because it is overbroad or unduly burdensome. *Id.*

### IV.   ANALYSIS

Through the instant dispute, LJEB seeks an order requiring compliance with its subpoena Requests Nos. 2-81. *See, e.g.*, Docket No. 22-4. The undersigned will address the pertinent considerations with respect to these requests below.[1]

#### A.   Congressional Authority

The NLRB may issue subpoenas for the production of evidence during the investigatory phase of an unfair labor practice proceeding upon the application of any party to such proceedings. *See* 29 U.S.C. § 161(1); *see also North Bay Plumbing*, 102 F.3d at 1008. The LJEB is a party to

---

[1] It is not entirely clear that each of the elements of an enforcement action is actually in dispute here. Respondent states that it "is not challenging the substance of the subpoena," Docket No. 27 at 17, but it states also that "the subpoena seeks irrelevant information and [is] unduly burdensome," *id.* at 21. The undersigned will analyze each of the requirements.

the underlying administrative proceeding, so it was statutorily authorized to apply for and receive the subject subpoena.[2]

B. Procedural Requirements

The NLRB has promulgated procedures regarding administrative subpoenas, including those addressing service requirements. *See Vista Del Sol Health Services*, 40 F. Supp. 3d at 1257-58. The undersigned finds that the LJEB complied with these procedures, having served the subpoena upon Respondent at its principal business on June 25, 2021. Docket No. 22-1 at ¶ 2.

C. Relevance

The undersigned also finds that the LJEB has shown that the documents responsive to these requests are relevant and material to the NLRB investigation. The United States Supreme Court has observed in other administrative contexts that relevance is "not especially constraining" and should be construed generously to afford the administrative body "access to virtually any material that might cast light on the allegations" at issue. *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984) (addressing relevancy requirement in the context of Title VII). An NLRB subpoena may be enforced if it "relates to any matter under investigation or in question." 29 U.S.C. § 161(1). In this context, "relevance is broadly interpreted, with courts concluding information sought in an administrative subpoena need only be 'reasonably relevant.' In defining relevance, courts generally defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *N.L.R.B. v. Kava Holdings, Inc.*, 2017 WL 3841780, at *3 (C.D. Cal. Aug. 8, 2017), *adopted*, 2017 WL 3841797 (C.D. Cal. Aug. 31, 2017).

Before analyzing the relevance of the requests at issue, the undersigned will address LJEB's argument that Respondent failed to exhaust a relevance objection within the administrative proceeding for the lion's share of requests. *See* Docket No. 22 at 11-12.[3] The Ninth Circuit has

---

[2] Respondent contends that LJEB has "misused" the subpoena process and is conducting a "fishing expedition." *See, e.g.*, Docket No. 27 at 10, 12. Such arguments are more properly addressed in analyzing relevance and burden. *See N.L.R.B. v. Vista Del Sol Health Servs., Inc.*, 40 F. Supp. 3d 1238, 1257 (C.D. Cal. 2014).

[3] Respondent lodged relevance objections to 13 requests. *See* Docket No. 1-4 at 188-193 (lodging such objection for Request Nos. 4, 18, 20, 22, 31, 46, 47, 59, 84, 85, 86, 89, and 90).

held that there is an exhaustion requirement for relevance objections. *N.L.R.B. v. Fresh & Easy Neighborhood Mkt., Inc.*, 805 F.3d 1155, 1163-64 (9th Cir. 2015). Respondent failed to address this exhaustion argument in its responsive brief here, so the undersigned agrees with LJEB that any relevancy objection has been waived to the extent not asserted in the NLRB proceedings. *See, e.g.*, *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1121 (D. Nev. 2020) (failure to respond to an argument raised in a motion constitutes consent to the granting of that portion of the motion).

Moreover, and at any rate, the undersigned also agrees with LJEB that the requests in dispute are all relevant. The complaint in the NLRB proceedings alleges that Respondent discriminated against employees regarding their hire, tenure and other terms and conditions of employment through a company-wide scheme to use the COVID-19 pandemic to undermine support for the union. *See, e.g.*, Docket No. 1-4 at 79-80. The complaint also alleges that Respondent advanced that scheme by selectively laying off, recalling, transferring, and rehiring employees to manipulate the composition of its workforce based on union support. *See, e.g.*, *id.* at 81-87. The complaint also alleges that Respondent unlawfully assisted employees to sign petitions against continued representation by LJEB at Palace Station Casino and Boulder Station Casino, and, on the basis of those petitions, withdrew recognition from LJEB as bargaining agent at those properties. *See, e.g.*, *id.* at 61-62. The complaint also alleges that Respondent failed to bargain with LJEB regarding various conditions of employment, including safety and layoff issues stemming from the pandemic. *See, e.g.*, *id.* at 81-82.

The undersigned agrees with LJEB that the subpoenaed documents are relevant to these allegations. Request Nos. 2-15 seek documents related to furloughs and layoffs. Such information is relevant to the closure decisions and their timing, the effectuation of the decision to stop operations, and whether Respondent manipulated furloughs and layoffs for ulterior purposes.[4]

---

[4] Respondent does not meaningfully engage in the relevance arguments advanced by LJEB. Instead, Respondent suggests that LJEB made only broad arguments untethered to the specific subpoena requests in dispute. Docket No. 27 at 15. That is wrong. LJEB provided specific argument as to relevance, Docket No. 22 at 13-19, which the undersigned finds sufficient to meet its burden on this issue.

4

Request Nos. 16-29 seek documents regarding employee recalls. *Id.* at 10-11. Such information is relevant to whether Respondent manipulated its employee complement by selectively recalling, rehiring, and reinstating employees.

Request Nos. 30-37 seek documents regarding employee transfers. *Id.* at 11. Such information is relevant to whether Respondent used discriminatory criteria in its transfer decisions.

Request Nos. 38-42 seek documents regarding employee hiring and rehiring. *Id.* at 12-13. Such information is relevant to whether Respondent selectively rehired employees based on their union sentiment and whether Respondent failed to negotiate regarding rehiring.

Request Nos. 53 and 54 seek documents regarding Respondent's reduction-in-force policies. *Id.* at 13-14. Such information is relevant to whether Respondent has applied its policies consistently.

Request Nos. 55-71 seek documents regarding unionization efforts. *Id.* at 14-16. Such information is relevant to Respondent's alleged union animus, alleged discriminatory employment decisions, alleged decertification efforts, and withdrawal of recognition of LJEB.

Request Nos. 72-79 seek documents regarding Fabiola Marni's employment. *See id.* at 16. Such information is relevant to the allegations that Respondent acted through Marni to solicit decertification of LJEB and that it provided improper aid to that effort.

Request No. 80 seeks documents related to awards given to Jose Gonzalez. *Id.* at 17. Such information is relevant to the allegations that Respondent acted through Gonzalez to solicit decertification of LJEB and that it provided improper aid to that effort.

Request No. 81 seeks documents related to awards given to Maria Sanchez. *Id*. Such information is relevant to the allegations that Respondent rewarded Sanchez for making unlawful promises of benefits.

In short, all of the subpoena requests at issue are relevant to allegations constituting the foundation of the NLRB proceedings.

D.  <u>Overbreadth or Undue Burden</u>

LJEB having established the foundational requirements for enforcement of its subpoena, the burden shifts to Respondent to establish the inquiry is unreasonable because it is overbroad or

unduly burdensome. *North Bay Plumbing*, 102 F.3d at 1007. An undue burden is established in this context by showing that compliance with the subpoena would unduly disrupt and seriously hinder normal business operations. *Vista Del Sol Health Services*, 40 F. Supp. 3d at 1256. This standard "is not easily met." *N.L.R.B. v. Carolina Food Processors, Inc.*, 81 F.3d 507, 513 (4th Cir. 1996). "Merely referencing the agency's extensive requests or asserting that compliance would be costly is not enough." *Fed. Housing Fin. Agency v. Saticoy Bay, LLC*, 2017 WL 3447796, at *1 (D. Nev. Aug. 10, 2017) (collecting cases), *adopted*, 2017 WL 3813908 (D. Nev. Aug. 31, 2017).

The undersigned is not persuaded by Respondent's assertion of an undue burden. The gist of Respondent's position is that it has produced thousands of documents and that it is continuing its efforts to search for more responsive documents. *See, e.g.*, Docket No. 27 at 12.[5] The fact that the subpoena seeks voluminous documents, however, is not sufficient to establish an undue burden in this context. *Carolina Food Processors*, 81 F.3d at 513-14; *N.L.R.B. v. G.H.R. Energy Corp.*, 707 F.2d 110, 114 (5th Cir. 1982). Respondent has failed to show that complying with the subpoena would disrupt its normal business operations and, contrary to such a showing, the productions made to date that Respondent touts bely any such assertion of business disruption. *See* Docket No. 28 at 10 (arguing that the productions made to date undermine any assertion of undue burdensomeness).

The undersigned is likewise unpersuaded that the subpoena is an improper fishing expedition that is overbroad. *See, e.g.*, Docket No. 27 at 15. While the scope of the subpoena is broad, Respondent also acknowledges that the scope of the NLRB proceedings is expansive. Docket No. 27 at 6-7. Moreover, each of the subpoena requests seeks documents pertinent to the NLRB proceeding. An insufficient showing has been made that the subpoena requests are "*needlessly* broad." *See N.L.R.B. v. Int'l Med. Sys.*, 640 F.2d 1110, 1114 (9th Cir. 1981) (emphasis added).

---

[5] LJEB notes that Respondent made boilerplate objections based on burdensomeness as to only eight of the subpoena requests. Docket No. 28 at 10.

### E. Enforcement

Having found that the elements exist to award relief, the undersigned turns to the relief that is warranted. LJEB seeks an order requiring Respondent to (1) complete its production of any requests that remain incomplete and (2) certify that any other production is complete. *See* Docket No. 22 at 23-25. Although not entirely clear, Respondent appears to argue that no enforcement order is warranted because LJEB has not identified particular documents responsive to the subpoena that have not been produced. *See* Docket No. 27 at 15. LJEB has the better argument.

The circumstances make clear that Respondent has not completed its production. By Respondent's own admission, for example, it has yet to "complete this process" of identifying and producing responsive text messages. Docket No. 27 at 19. Similarly with respect to other requests, Respondent states that it "continues to conduct reasonable searches to locate responsive information." *Id.* at 20. Hence, the record is clear from Respondent's own admissions that it has not yet satisfied its obligation of identifying and producing responsive documents. Moreover, this subpoena process is meant to have an end point. *See, e.g.*, 29 U.S.C. § 161(1) (subpoenaed evidence may be required at the designated place of hearing).[6] LJEB is entitled to an order enforcing the subpoena by requiring the production of all responsive documents by a date certain, along with a certification from Respondent as to the completeness of the production made.

A similar scenario was addressed in *N.L.R.B. v. KB In & Out, Inc.*, 2013 WL 12155187 (C.D. Cal. May 6, 2013). In that case, the respondent resisted an order to comply with a subpoena on the ground that it had "already complied with the subpoena by producing documents and appearing at a deposition, [and] that the NLRB ha[d] not shown that Respondent is withholding documents." *Id.* at *1. Rather than requiring a catalogue of particular documents that were missing from the production, the court granted the application to enforce because "Respondent has failed

---

[6] Respondent contends (without citation) that it is common to have "a rolling production approach that occurs as trial proceeds." Docket No. 27 at 13. It seems obvious given the purposes behind the NLRB subpoena process that a party cannot delay completing its production obligations by engaging in such a rolling production that is never ending. Ample time has passed for Respondent to complete its production related to the subject subpoena.

7

to produce certain standard business records, or, if such documents are unavailable, has failed to identify or account for them." *Id.*[7]

Accordingly, Respondent should be ordered to complete its search for responsive documents and produce them all within 30 days, and to certify that its search and production have been completed by that date.

## V. CONCLUSION

For the reasons discussed more fully above, the undersigned **RECOMMENDS** that the motion to enforce subpoena be **GRANTED**. Respondent should be ordered to complete its search for responsive documents and produce them all within 30 days, and to certify that its search and production have been completed by that date.

Dated: November 8, 2022

Nancy J. Koppe
United States Magistrate Judge

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

---

[7] The undersigned previously expressed concern in another case that an order must be sufficiently specific and definite. *N.L.R.B. v. Red Rock Resorts, Inc.*, No. 2:21-cv-01986-RFB-NJK, Docket No. 34 at 3 n.5 (D. Nev. Feb. 28, 2022). Contrary to Respondent's contention, Docket No. 27 at 15, the undersigned did not indicate that a movant must identify specific documents for production. The undersigned is persuaded by LJEB's argument that it is appropriate to issue an order requiring the completion of the production and certification of compliance. *See* Docket No. 22 at 23-25.